IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| SIEMENS MEDICAL SOLUTIONS USA, INC. | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.: AW-08-2087 |
| NATIONAL IMAGES, INC., et al. | * | |
| Defendants. | * | |

**************************************************************************

## MEMORANDUM OPINION

Plaintiff, Siemens Medical Solutions USA ("Siemens"), Inc filed this diversity action on August 12, 2008. In particular, against Defendant, 5001 SHR LLC ("Landlord"), Siemens filed for replevin, declaratory relief, and for breach of consent and waiver agreement. On September 24, 2008, the Court held a Show Cause Hearing ("Hearing") to address the disposition of various pieces of medical equipment leased to Defendant, National Images, Inc., by Siemens and located at 5001 Silver Hill Road Temple Hills, Maryland, property owned by the Landlord. At the conclusion of the Hearing, the Court issued a Writ of Replevin and a Writ to Replevy Equipment against the Landlord, Howard L. Brooks, and Charles E. Hunter. Presently pending is Siemens' request that the Court find the Landlord in contempt of those Writs.

### I.    Factual Background

The facts of this case, as represented by the parties in their pleadings and on the record at the Hearing are critical to the determinations of the Court. Therefore, the Court will first set out, in detail, all of the events that have transpired thus far and all of the facts relevant to the Court's

opinion.

    A.    <u>Prior to the Show Cause Hearing</u>

In March 2007, National Images leased several pieces of medical equipment from Siemens Financial Services, Inc. (*See e.g.* Paper No. 11 Exs. A, B, O, Q, S, *et seq.*) National Images leased the premises of 5001 Silver Hill Road, from the Landlord as its place of business. On March 24, 2007, Siemens Financial Services, Inc, National Images and the Landlord signed a Consent and Waiver Agreement ("Agreement"). (Paper No. 11 Ex. E) The Agreement set out the rights and the responsibilities of each party regarding several issues, but most importantly, title of the equipment, affixation of the equipment to the premises, removal of the equipment, and default under either lease agreement by National Images. (*Id.*) On March 6, 2008, Siemens Financial Solutions, Inc. assigned all of its rights and remedies under the leases to Siemens. (Paper No. 11 Ex.1)

On July 7, 2008, the Landlord notified National Images of its intent to terminate the lease for non-payment of rent. (Paper No. 11 Ex. F) In accordance with the Agreement, this notification was forwarded to Siemens via facsimile on the same date. (*Id.*) Once Siemens received a notice of default by National Images from the Landlord, and the Landlord desired to repossess the premises, the Agreement provided that:

> ". . . provided Siemens is permitted to do so under the Agreement and by law, Siemens shall cause the Equipment to be removed within 90 days after receipt of such notice. In the event that the Equipment is not removed within sixty (60) days after such notice, Siemens shall pay rent to [Landlord] in the same amount payable by [National Images] immediately prior to its departure from the Equipment Location from the 61st day after such notice until the Equipment is removed and all required repairs to the premises by Siemens are completed. At all times during the 90-day period, the Equipment Location shall be maintained in the same condition by [Landlord] as prior to [National Images'] departure including without limitation the provision of electricity to the Equipment Location. Unless Siemens

>agrees, by written notice received by Landlord within fifteen (15) days following Siemens' receipt of the Lease Default Notice, that Siemens shall promptly undertake and diligently proceed to remove and deinstall the Equipment <u>or</u> to the extent same is not removed and deinstalled within ninety (90) days following Siemens' receipt of the Lease Default Notice, then Siemens and [National Images] each agree, to the full extent of their respective rights in the Equipment, that the same shall be deemed abandoned to [National Images] (and this Agreement shall act as authorization for [Landlord] to record releases of any financing statements and similar lien instruments).

(Paper No. 11 Ex. E) (emphasis added)  On July 22, 2008, the 15th day, Siemens sent an e-mail to counsel for the Landlord.  The e-mail acknowledge receipt of the notice and stated, "Siemens has no intention in abandoning nor surrendering the equipment.  Please be advised that this e-mail puts you on notice that Siemens owens [sic] equipments at this location.  In addition Siemens will pursuit [sic] all its rights and remedies allowed by law."  Siemens also indicated its intent to forward the message to their counsel for follow up. (Paper No. 11. Ex. G)

On July 23, 2008, counsel for Siemens sent a formal letter to Landlord, acknowledged the notice of default and stated, among other things, "please be advised that Siemens Medical shall take all steps permitted by law and the Equipment Leases to de-install, remove, and take possession of the Siemens Equipment."  (Paper No. 11 Ex. H) On July 24, 2008, counsel for the Landlord responded to counsel for Siemens by e-mail and stated, "there are appears to be some confusion on the part of Siemens regarding ownership of the equipment at this stage . . . ." (Paper No. 11. Ex. I) Counsel for the Landlord referred to the Agreement and stated, "[w]hile we have received Siemens' written assertion that it owns the equipment, and your similar assertion yesterday, no one has yet notified the Landlord committing to remove the equipment within the requisite time period.  This notice is required under the Waiver." (*Id.*) Counsel for the Landlord reminded Siemens of the many edits that the Agreement underwent and stated that the abandonment clause was drafted the way it

was so that, "if Siemens did not promptly notify the Landlord in writing of Siemens' intent then the parties would treat the equipment as abandoned and the Landlord could then proceed as the Landlord wished." (*Id.*) Counsel for the Landlord concluded that, "pursuant to the Waiver . . ., as of this point, the equipment has been abandoned *to the Tenant*. The Tenant, in turn, has granted the Landlord a security interest in the equipment, and the Landlord has perfect this security interest by filing a UCC-1. . . . [W]hat the Landlord is truly interested in here is for Siemens to exercise its rights pursuant to Paragraph 7 of the Waiver to identify and propose an acceptable replacement tenant. "[1] (*Id.*) (emphasis in original)

Counsel for Siemens responded immediately and stated that it believed "that the position the Landlord has taken . . . lacks any good faith basis in law or fact. . . . Siemens has repeatedly put the Landlord on notice of its rights in and to the Equipment and its intention not to abandon or surrender the Equipment. . . ." (Paper No. 11 Ex. J) Moreover, Siemens informed the Landlord that it would pursue all of its rights and remedies allowed by law with regard to the Equipment. " (*Id.*) On July 30, 2008, Counsel for the Landlord, flatly stated, "the Landlord does not want the equipment. The Landlord wants to work with Siemens to identify a replacement occupant . . . ." (Paper No. 11 Ex. K) On July 31, 2008, a conversation between counsel took place by phone. (Paper No. 11. Ex. M) During that conversation, counsel for the Landlord stated, "that Siemens Medical should be doing everything it could to remove the Equipment (including filing an action in state court.)" (*Id.*) At some point prior to August 8, 2008, Siemens notified the Landlord that it intended to begin removal of the Equipment on Monday, August 11, 2008, but it was brought to

---

[1] Paragraph 7 of the Agreement requires the Landlord to consider, in good faith, a replacement tenant for the Equipment premises proposed by Siemens, but the paragraph also states that, "Siemens is under no obligation" to propose a replacement tenant.

Siemens' attention that the Landlord would not allow the removal to begin. (*Id.*) In an e-mail dated August 8, 2008, Counsel for the Landlord confirmed that "neither Siemens nor their contractors [would] be allowed access to the Building on Monday." (Paper No. 11 Ex. N)

Siemens filed the present action in this Court on August 12, 2008. Counsel for Siemens sent a courtesy copy of the Complaint to counsel for the Landlord by e-mail on the same day. (Paper No. 22 Ex. 1) The Court set a Show Cause Hearing for August 28, 2008. (Paper No. 9) Local counsel for Siemens was unable to secure service of process on all parties by the deadline set by the Court and filed a request to reschedule the Hearing. (Paper No. 10) The Court granted the request and rescheduled the Hearing for September 12, 2008. (Paper No. 15) On September 4, 2008, counsel for the Landlord acknowledged that service was effected up the Landlord's Resident Agent. (Paper No. 22. Ex. 7) Counsel for the Landlord asked local counsel for Siemens to reschedule the Hearing to allow him adequate time to brief the issues. (*Id.*) Local counsel for Siemens obliged and filed a request to reschedule the Hearing. The Hearing was rescheduled for September 24, 2008.

    B.    <u>The Show Cause Hearing</u>

At the start of the hearing, Counsel for Siemens informed the Court that, upon information and belief, National Images filed for bankruptcy that morning. The Court took note of the information and then turned its attention to the Writ of Replevin. The Court inquired whether there were any issues in dispute with respect to the Writ and whether the Landlord wished to raises any defenses to it. (Hearing Tr. p. 3) Counsel for the Landlord stated, "we don't oppose the proposed order that Siemens submitted . . . if Your Honor also requires that Siemens have the courtesy to call my client . . . and coordinate and arrange for the removal of the equipment as the affidavit attachment to our answer suggests." (Hearing Tr. p. 3-4) Counsel for the Landlord further

explained that the removal of the equipment was not a simple task and stated, "as the e-mail of August 19th suggests, we've been prepared to walk away from title since then. We've been prepared to have them come in and [remove the equipment], but they seem to just refuse to call my client and try to do this in a civil way." (*Id*. at p. 4)

The Court addressed a provision of the parties' Waiver & Consent Agreement ("Agreement") which outlined the responsibilities of the parties for the removal of the equipment. Siemens acknowledged their responsibility under the Agreement and agreed to comply with it. The Court advised both parties that as responsible officers of the court, they ought to work together to reach the objective. The Court then addressed the Landlord's counterclaim and asked counsel to explain the basis for it. Counsel for the Landlord began to address the 60 day provision of the Agreement, which required Siemens to pay rent to the Landlord, and the 90 day provision, which precipitated an abandonment of title by Siemens.[2] In the midst of his explanation, counsel for the Landlord voluntarily stated, "I will concede and I think Siemens will concede that there's no way that they're going to satisfy the 90-day requirement. *I will concede to the [C]ourt we're not going to claim title to the equipment at the end of 90 days if the reason they can't pull it out is because of the tenant being in bankruptcy*. But yes, we do intend to press the rent claim." (Hearing Tr. p. 7) Just before the Court concluded the Hearing, an attorney for National Images interrupted the proceedings. Although she did not file an appearance for National Images in this Court, she informed the Court that National Images did indeed file for Chapter 11 Bankruptcy that morning. She also objected to the removal of the equipment and confirmed that no judgment or writs would be issued against National Images. Siemens voiced their objection to the Stay and informed the Court that the

---

[2]The Agreement also contains a 15-day notice provision. At no time during the hearing was the 15-day provision raised or discussed. The 15-day notice provision expired on July 22, 2008.

equipment was in danger of sustaining irreparable damage as a result of rolling power outages in the building.  The Court acknowledged their concern and encouraged Siemens to seek emergency relief from the Bankruptcy Court.  The Court gave Siemens "five days to get relief or whatever relief [it] needed] for the removal of the equipment."  Counsel for National Images added, "it may be a little longer than five days in order for them to file the motion."   The Court then stated, Siemens has "five days to check out what [they] can or should do as an air of caution and report back to [the Court] in five days."  Ultimately, the Court accepted the representations of counsel for National Images, as an officer of the court, and issued the Writs against only the Landlord, Howard Brooks and Charles Hunter.  The Court then adjourned the Hearing.

    C.    After the Hearing

On October 10, 2008, counsel for the Landlord sent an e-mail to counsel for National Images, and copied counsel for Siemens.  (Paper No. 37 Ex. H)  Counsel for the Landlord informed counsel for National Images of his intent to go to the Prince George's County District Court immediately and proceed with an eviction of National Images and also to seek a Warrant of Restitution.[3]  (*Id*.)  Counsel for the Landlord filed for eviction that afternoon.  (*Id*.)  That same day, counsel for the Landlord informed Siemens that the 90-day period expired on October 6, 2008, that title now belonged to the Landlord and that "although [it] conceded at the Show-Cause that [it] was no longer claiming title to the Equipment pursuant to the 15-day notice provision, [it] did not waive [its right] to claim title to the Equipment based upon the 90-day provision." (Paper No. 37 Ex. E)

On October 22, 2008, the Court held a telephonic hearing to discuss and determine whether

---

[3] During the Hearing, Counsel for the Landlord stated, ". . . I can't imagine that the writ is not stayed by the filing of the bankruptcy.  I have been awarded judgment and possession for the space and I was planning on going down to district court today after here and filing for a writ of restitution to have them kicked out of the space, but even I know I can't do that based on the bankruptcy filing."

these recent actions taken by the Landlord are contrary to and in contempt of the Court's Writ of Replevin and Writ to Replevy Equipment entered on September 25, 2008.  Siemens requests that this Court find the Landlord in contempt of the Writs entered on September 25, 2008.  The Landlord argues that it never waived nor did this Court decide the issue of the deadlines under the Agreement, and now seeks to lay claim to title of the equipment and litigate the issue before the U.S. Bankruptcy Court for the District of Maryland.

## II.     Analysis

Both Siemens and the Landlord have inundated the Court with documents in support of their positions with respect to the Writs and title of the equipment.  Siemens argues that the Landlord's sudden claim that Siemens has now forfeited title to the equipment by virtue of the expiration of the 90-day provision, is in direct contravention to the Court's Writs and the Landlord's representations to this Court and the parties.   Siemens maintains that at no time did they ever undertake any actions that could be construed as abandoning title to the equipment, and the only reason they have failed to remove the equipment is because of the Bankruptcy Stay and actions by the Landlord.   Siemens states that, initially, they tried to work with National Images to negotiate a consensual lift stay order.   When negotiations were unsuccessful, Siemens filed a motion for relief from automatic stay.   Siemens tried to expedite the process by filing a motion to shorten time to respond to motion for automatic relief from stay.  The Landlord successfully opposed this motion.

The Landlord argues that the Court gave Siemens a deadline of September 29th when it told Siemens they had "five days to get relief [from the bankruptcy court] for removal of the equipment."   The Landlord states that Siemens believes it can "ignore the mandate of this Court

to have filed [its] Lift-Stay Motion by September 29 with impunity." (Paper No. 41)  Further the Landlord states, "at the time the undersigned made the quoted remark at the Show Cause Hearing, the 90-day period had not run, and Siemens was indicating that it intended to move as quickly as possible." (*Id.*)  Finally, the Landlord insists that Siemens' actions subsequent to the Hearing sanction the Landlord's present claim to title and "presents a sufficiently new situation" entitling the Landlord to argue the issue of title before the Bankruptcy Court.

      The Court is unpersuaded and in fact disturbed by the Landlord's, unreasonable at best and fallacious at worst, interpretation of what transpired during the Hearing.  First, the Court is keenly aware of the bounds of its jurisdiction and that of the U.S. Bankruptcy Court.  While the Bankruptcy Court does have jurisdiction over all matters relating to the Debtor's business and property, the issue of the Agreement between Siemens and the Landlord and the effect of the Agreement on the ownership of the property between Siemens and the Landlord was squarely before and decided by this Court.  The whole purpose of the Hearing was to litigate that issue, and had counsel for National Images not appeared at the eleventh hour, the Writ would have been issued against all parties and executed by the Marshal forthwith.

      The Landlord's about-face and inconsistent characterization of its statements during the Hearing is also unsettling.  On the record, the Landlord clearly stated that it would "not claim title to the equipment at the end of 90 days, if the reason Siemens could not pull it out was because of the tenant's bankruptcy." (Hearing Tr. p. 7)  While the Landlord may have surreptitiously intended for this statement to have a different meaning; the Court finds no ambiguity in what the statement conveys.  Moreover, at the beginning of the Hearing, the Landlord unequivocally stated, "we don't oppose the proposed order that Siemens submitted."

These statements juxtaposed with the Landlord's claim that "[a]ll the replevin Order accomplished was to confirm that as of the Hearing the Landlord did not have any present title to the Equipment on the basis of the 15-day notice/forfeiture provisions," (Paper No. 37 Ex. G) and that the Landlord "did not waive its right to claim title based upon the 90-day provision" strike the Court as disingenuous and shifty tactics, designed to recede from its previous position to not claim title to the equipment and to work in good faith with Siemens pending the Lift Stay from the Bankruptcy Court.

     While zealous representation of one's client is expected and to be commended, playing fast and loose with the Court will not be tolerated. Counsel for the Landlord had every opportunity during the Hearing to either object to the Writs or apprise the Court of the Landlord's intent to seek alternative means to dispute title. He did neither. Instead, he affirmatively chose not to oppose the Writ or voice any intent to lay claim to title under the 90-day provision in the future. Counsel for the Landlord's statements at the Hearing were clear, and under principles of judicial estoppel the Court believes the Landlord should be precluded from now asserting that it has a right to title of the equipment based on <u>any</u> provision of the Agreement. *See New Hampshire v. Maine*, 532 U.S. 742 (2001) ("Under the doctrine of judicial estoppel, where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him"). As is customary, the Orders of a court embody the events that transpire during a Hearing, both in substance and in spirit. Counsel for the Landlord's attempt to interpret the Writs in a manner that backs Plaintiff, and this Court, into a corner based

on incidental words absent from the Court's Writs is, quiet candidly, disquieting to the Court. In order to prevent what appears to be an effort by the Landlord to recede from the previous position it took, the Court will clarify exactly how the events of the Hearing and the Writs issued by the Court on September 25th should be understood.

The Hearing took place on September 24, 2008. During the hearing, and before the Court was formally notified that National Images had filed for bankruptcy, the issue of a declaration of who owns the equipment was raised. (Hearing Tr. p. 5) The Court commented that the issue was "moot with the removal of the equipment," and did not issue a declaration. (*Id.*) The Landlord then voluntarily conceded that it would not lay claim to title of the Equipment under the 90-day provision, if Siemens could not pull it out "because of the tenant being in bankruptcy." (Hearing Tr. p. 7) The Court and Siemens, in good faith, accepted this concession. Thus, although the Court will stop short of finding that this concession permanently relinquished any claims to title by the Landlord, it certainly tolled the 90-day provision indefinitely[4], or until such time that the Bankruptcy Court lifts the Stay and Siemens has a reasonable time to execute the Writs. To date, the reason Siemens cannot pull out the equipment is "because of the tenant being in bankruptcy." The Court's "five day" time frame for Plaintiffs to report to the Court, was just that – a time frame. It was neither a deadline nor a mandate. The expiration of the "five-day" time frame did not alter the fact that National Images' bankruptcy prevents Siemens from removing the equipment. Nor did the time frame automatically restart the 90-day provision. Counsel for the Landlord's belief that "[a]ll the

---

[4] Landlord's claim to title of the equipment under the 90-day provision is severely undermined given the delay tactics employed by the Landlord dating back to August 2008. But for these delays, the 90-day deadline never would have been an issue.

replevin Order accomplished was to confirm that as of the Hearing the Landlord did not have any present title to the Equipment on the basis of the 15-day notice/forfeiture provisions," is misguided and lacks merit.  As of the date of the Hearing, the trigger date of 15-day provision under the Agreement had long since passed, and as such was moot.  Moreover, at the Hearing, counsel for the Landlord never raised, referred to or eluded to any rights claimed by his client under this provision. Nor did the Court.  The Court tabled the issue of rent due under the 60-day provision for another day.  Those were the Court's determinations at the Hearing on September 24, 2008.

**III.    Conclusion**

Although the Court finds Landlord's recent actions troubling and dangerously close to contemptuous behavior; the Court will not find the Landlord in contempt at this time.  The Court believes that this memorandum opinion has now clarified the Court's findings, conclusions and expectations with respect to the rights to and title of the equipment as between Siemens and the Landlord.  The Court will issue a separate order and clearly delineate the rights and responsibilities of the parties.  The parties and their counsel are reminded of their obligation to operate in good faith in adhering to the directives and the spirit of the Court's Orders.  Additionally, the parties and their counsel are warned that the Court is prepared to enforce its order if necessary.

/s/
Alexander Williams, Jr.
United States District Judge